{¶ 1} Defendants-appellants, Olmsted Township, Ohio (Olmsted), and the Ohio Attorney General, appeal the trial court's decision reversing the Olmsted Township Board of Zoning Appeals' (BZA) denial of plaintiffs-appellees', John Bergman, Richard Bergman, and Schady Creek, LLC's (collectively referred to as the Bergmans) application for variances from Olmsted's R-40 zoning requirement.
 {¶ 2} On March 19, 2007, the Bergmans filed an application for twelve area variances in order to construct a development of townhomes. The property is located in an R-40 zoning district, a designation for single family dwellings on the southeast quadrant of Schady Road and Sharp Road in Olmsted Township, Ohio, and is 29.32 acres.
 {¶ 3} The Bergmans are seeking to construct an "active adult lifestyle" community that consists of one hundred sixteen homes, a community clubhouse, and a swimming pool. The one hundred sixteen homes would consist of four cluster homes as part of a single unit.
 {¶ 4} On April 18, 2007, the BZA, voted three-to-one against granting the Bergmans' application for variances.
 {¶ 5} It must also be noted that in 2005, the Bergmans sought to rezone the property from R-40 to RMF-T, a designation for townhome dwellings, and was denied by the BZA. On September 20, 2005, the Bergmans filed a complaint for declaratory judgment and for a mandatory injunction with the trial court in *Page 4 
case number CV-572934. On February 10, 2005, plaintiff DiSanto Enterprises, Inc. (DiSanto) filed a separate complaint for declaratory judgment and for a mandatory injunction with the trial court in case number CV-554418. On November 14, 2005, the trial court consolidated the matters under CV-554418 because the cases dealt with similar issues.
 {¶ 6} On October 30, 2007, the trial court issued an order and opinion pertaining to the Bergmans' property and reversed the BZA's denial of the Bergmans' request for variances, finding by a preponderance of substantial, reliable and probative evidence as follows:
 "1. Appellants' property cannot yield a reasonable return under the current zoning restrictions, there cannot be any beneficial use of the property without Appellants' requested variances;
 2. That Appellants' variances are not substantial given the changed conditions and densities in the area;
 3. That the essential character of the neighborhood would not be substantially altered and adjoining properties would not suffer a substantial detriment as a result of the variances;
 4. The variances would not adversely affect the delivery of governmental services;
 5. The Appellants' predicament cannot feasibly be obviated through some method other than the requested variances;
 6. That the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting Appellants' requested variances; and *Page 5 
 7. That the granting of the variances requested will not confer on the applicant any special privilege.
 The Court finds that due to the unique nature of appellants' property, Appellants established `practical difficulties' under Ohio law and the Olmsted Township Zoning Resolution Section 540.06(b) by a preponderance of substantial, reliable and probative evidence presented at the Olmsted Township Board of Zoning Appeals administrative proceeding * * *."
 {¶ 7} On November 28, 2007, the trial court granted the Bergmans' motion for Civ. R. 54(B) certification, thus deeming the October 30, 2007 order a final appealable order.
 {¶ 8} Olmsted appeals, asserting three assignments of error for our review.
 {¶ 9} The standard of review for all three assignments of error is the same. Notably, "[w]e have a very limited standard of review on appeal, which is unlike that employed by the court of common pleas." Dade v.City of Bay Village, Ohio Bd. of Zoning Appeals, Cuyahoga App. No. 87728, 2006-Ohio-6416.
 {¶ 10} Pursuant to R.C. 2506.04, the Court of Common Pleas may:
 "[F]ind that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record."
 {¶ 11} However, "[o]ur review is limited to determining whether the court's decision is supported by a preponderance of reliable, probative and substantial *Page 6 
evidence. This is, in essence, a determination of whether the court abused its discretion in affirming the administrative decision."Dade at ___3. (Internal citations omitted.) "The term `abuse of discretion' connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 12} In consideration thereof, we proceed to address Olmsted's assignments of error.
ASSIGNMENT OF ERROR NUMBER ONE
 "The Trial Court erred by reversing the Olmsted Township Board of Zoning Appeals' decision denying Appellees' requested variances, which variances (a) exceed the current zoning density by 400%, (b) essentially rezone the subject property to a different development residential use, and (c) result in a high density development that is contrary to Olmsted Township's Comprehensive Plan."
 {¶ 13} Olmsted argues that the trial court erred when it reversed the BZA for the following reasons: the variances exceed current zoning density by 400%; the variances essentially rezone the property; and because the variances result in a high-density development that is contrary to Olmsted's Comprehensive Plan. *Page 7 
 {¶ 14} The Supreme Court of Ohio held that: "A variance is intended to permit amelioration of strict compliance of the zoning ordinance in individual cases." Consolidated Mgt, Inc. v. City of Cleveland (1983),6 Ohio St.3d 238.
 {¶ 15} In applying the law to the facts of this case, we note that in 1998, Olmsted issued a Comprehensive Land Use Plan (Plan) that permits by right the construction of single-family dwellings on 40,000 square foot lots pursuant to R-40 zoning. However, the Plan also acknowledged annexation as an issue to be addressed and created an exception to the general R-40 zoning designation in areas south of Schady Road, "where abutting land in Olmsted Falls was annexed from the Township and has been developed at approximately 2.65 units per acre." (Plan at 42.)
 {¶ 16} A review of area maps of the Bergman property and surrounding areas reveals that two properties just north of the Bergman property, on the other side of Schady Road, are rezoned to accommodate apartments and townhomes, respectively. As such, Galway Bay subdivision consists of 4.0 units per acre and Evergreen Farm Apartments consist of 10.0 units per acre.
 {¶ 17} South of Schady Road, and to the direct east and west of the Bergman properties, the land is zoned R-40. However, the property directly east maintains a landscaping business on the property. The nearest two properties just south of the Bergman property are developments consisting of 4.1 and 3.6 units per acre, respectively. *Page 8 
 {¶ 18} Thus, although the variances requested by Bergman exceed the current zoning density by 400%, the variances do not rezone the subject property. Further, the variances are still consistent with the pattern of existing development and are not contrary to Olmsted's Plan. As such, the trial court's decision is supported by a preponderance of reliable, probative, and substantial evidence.
 {¶ 19} Olmsted's first assignment of error is overruled.
ASSIGNMENT OF ERROR NUMBER TWO
 "The Trial Court's decision to reverse the Township BZA is NOT supported by reliable or probative evidence in the record."
 {¶ 20} Olmsted argues that the trial court abused its discretion in reversing the BZA because its decision is not supported by substantial, reliable, and probative evidence on the whole record.
 {¶ 21} Olmsted's Zoning Resolution, adopted on March 9, 2000, sets forth those practical difficulties that warrant the granting of a variance and reads in part:
 "[T]he [BZA] shall review each application for a variance to determine if it complies with the purpose and intent of this Resolution and evidence demonstrates that the literal enforcement of this Resolution will result in practical difficulty. The following factors shall be considered and weighed by the [BZA] in determining practical difficulty:
 (1) Whether special conditions and circumstances exist which are peculiar to the land or structure involved *Page 9 and which are not applicable generally to other lands or structures in the same zoning district; examples of such special conditions or circumstances are: exceptional irregularity, narrowness, shallowness or steepness of the lot, or adjacency to nonconforming and inharmonious uses, structures or conditions;
 (2) Whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance;
 (3) Whether the variance is substantial and is the minimum necessary to make possible the reasonable use of the land or structures;
 (4) Whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer substantial detriment as a result of the variance;
 (5) Whether the variances would adversely affect the delivery of governmental services such as water, sewer, trash pickup;
 (6) Whether special conditions or circumstances exist as a result of actions of the owner;
 (7) Whether the property owner's predicament feasibly can be obviated through some method other than a variance;
 (8) Whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting a variance; and
 (9) Whether the granting of the variance requested will confer on the applicant any special privilege that is denied by this regulation to other lands, structures, or buildings in the same district." *Page 10 
 {¶ 22} In applying the factors set forth in Olmsted's Zoning Resolution, we cannot find that the trial court's decision is not supported by a preponderance of reliable, probative and substantial evidence.
 {¶ 23} Special conditions and circumstances exist which are peculiar to the Bergman property, namely, adjacency to nonconforming and inharmonious uses or conditions. The property to the near east, although zoned R-40, maintains a landscaping company on the property, a nonconforming use. The properties to the near south are also nonconforming because the properties have a higher density than otherwise allowed for R-40 zoning. The properties to the north contain townhomes and apartments.
 {¶ 24} Further, the record reveals that the proposed plan is not a plan to maximize profit, but rather to make economically feasible use of the property.
 {¶ 25} The variances requested are also minimally necessary to make possible the reasonable use of the land. The Bergmans demonstrated that they would break even if they followed the R-40 zoning requirement, and that the proposed development is not an attempt to maximize profit but rather to make economically feasible use of the land.
 {¶ 26} The essential character of the neighborhood would not be substantially altered, nor would adjoining properties suffer substantial detriment as a result of the variances because those properties are already substantially altered from the original R-40 zoning requirement. Further, the *Page 11 
Bergmans' proposed development will have a lighter traffic flow and lessen the impact on the public school system because the community is designed for homeowners over age fifty-five, preventing substantial detriment to adjacent properties.
 {¶ 27} Additionally, there is no evidence in the record demonstrating that the variances would adversely affect the delivery of governmental services such as water, sewer, safety services and trash pickup. Nor does there appear to be special conditions or circumstances as a result of the Bergmans' actions.
 {¶ 28} The Bergmans' predicament cannot feasibly be obviated through means other than a variance because the Bergmans already sought to rezone the property in 2005 from R-40 to RMF-T and was denied.
 {¶ 29} The spirit and intent behind the zoning requirement would be observed and substantial justice done because surrounding properties are already altered from R-40 to varying degrees. Furthermore, there is no evidence in the record demonstrating that the granting of the variance would confer any special privileges on Bergman.
 {¶ 30} Therefore, we find that the trial court's decision is supported by a preponderance of reliable, probative, and substantial evidence.
 {¶ 31} Olmsted's second assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER THREE *Page 12 
 "As a matter of law the Trial Court's decision finding that Appellees demonstrated `practical difficulties' is contrary to the variance standards enumerated by the Ohio Supreme Court in Duncan v. Middlefield, 23 Ohio St.3d 83 (1986)."
 {¶ 32} Olmsted argues that the trial court erred when it applied the "practical difficulties" factors set forth in Olmsted's Zoning Resolutions as opposed to the factors set forth by the Supreme Court of Ohio in Duncan v. Middlefield (1986), 23 Ohio St.3d 83.
 {¶ 33} In Duncan, the Supreme Court of Ohio held as follows, as it pertains to area variances:
 "The factors to be considered and weighed in determining whether a property owner seeking an area variance has encountered practical difficulties in the use of his property include, but are not limited to:
 (1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance;
 (2) whether the variance is substantial;
 (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance;
 (4) whether the variance would adversely affect the delivery of governmental services (e.g., water, sewer, garbage);
 (5) whether the property owner purchased the property with knowledge of the zoning restriction; *Page 13 
 (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance;
 (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance." Duncan at syllabus.
 {¶ 34} In doing so, the Duncan court expounded upon its prior holding in Kisil v. City of Sandusky (1984), 12 Ohio St.3d 30:
 "The standard for granting a variance which relates solely to area requirements should be a lesser standard than that applied to variances which relate to use. An application for an area variance need not establish unnecessary hardship; it is sufficient that the application show practical difficulties." Kisil at syllabus.
 {¶ 35} Thus, a line-by-line comparison of Olmsted's Zoning Resolutions and the factors in Duncan reveal that Olmsted incorporated theDuncan factors into its Zoning Resolution. Thus, the record makes clear that the trial court followed Duncan.
 {¶ 36} The only factor that is not contained in the Zoning Resolution is "whether the property owner purchased the property with knowledge of the zoning restriction," which is not an issue in the case sub judice. Furthermore, as it pertains to Duncan, we have held that "no single factor controls in the determination of practical difficulties; the inquiry should focus on the spirit *Page 14 
rather than the strict letter of the zoning ordinance so that substantial justice is done." Dyke v. City of Shaker Heights, Ohio, Cuyahoga App. No. 83010, 2004-Ohio-514.
 {¶ 37} Therefore, we cannot find that the trial court erred when it applied the "practical difficulties" factors set forth in Olmsted's Zoning Resolution, and thus, the trial court's decision is supported by a preponderance of reliable, probative, and substantial evidence.
 {¶ 38} Olmsted's third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellees recover from appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ANTHONY O. CALABRESE, JR., P.J., and MELODY J. STEWART, J., CONCUR *Page 1